IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

**DILLON CALLAWAY**                                                                **PLAINTIFF**

v.                                                                                                         No. 4:19CV7-RP

**WARDEN TIMOTHY MORRIS**
**WARDEN LEE SIMON**
**WARDEN VERLENA FLAGG**
**WILLIE KNIGHTEN**
**LT. ED THIGPEN**
**LT. MONTRELL ALEXANDER**                                 **DEFENDANTS**

**MEMORANDUM OPINION**

This matter comes before the court on the *pro se* prisoner complaint of Dillon Callaway, who challenges the conditions of his confinement under 42 U.S.C. § 1983. For the purposes of the Prison Litigation Reform Act, the court notes that the plaintiff was incarcerated when he filed this suit. The plaintiff has brought the instant case under 42 U.S.C. § 1983, which provides a federal cause of action against "[e]very person" who under color of state authority causes the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. The plaintiff alleges that the defendants subjected him to unconstitutionally harsh general conditions of confinement and failed to provide him with adequate medical care. For the reasons set forth below, the plaintiff's claims regarding the general conditions of his confinement will be dismissed for failure to state a claim upon which relief could be granted. His claims regarding failure to provide adequate medical care will, however, proceed.

**Factual Allegations**

Mr. Callaway is concerned with the fact that his previous cell leaked when it rained, and the water caused mold to grow in his cell. In addition, he slipped and fell in the water, tore a meniscus in

his knee, and has not gotten the treatment he believes is required under the Constitution. His claims are straightforward, as set forth in the following timeline:

| Date | Event |
|---|---|
| 1/30/2018: | He told the Unit Officer about the leak in his cell. The Officer said he would forward the complaint to the Lieutenant. |
| 2/7/2018: | Callaway told Lt. Thigpen about the leak. Thigpen said he would get with the Warden about the problem. |
| 2/19/2018: | Callaway wrote Warden Morris about the leaky cell and requested to be moved to another cell. |
| 2/26/2018: | Callaway filed a grievance about the leaky cell, but an officer mistakenly put the grievance in the mail, which was returned to him – delaying its handling. |
| 3/1/2018: | Callaway re-filed the grievance. |
| 3/12/2018: | Callaway slipped and fell in his wet cell, injuring his back, head, and knee. An ambulance arrived, and he was treated on the scene. He was supposed to have been transported to the prison hospital, but there were not enough officers on duty to provide an escort. |
| 3/14/2018: | Hospital Transportation Officer Cashew and Officer Johnson arrived to transport Callaway to the hospital, but an officer had inadvertently taken the cell keys – and Callaway could not go to the hospital. |
| 3/20/2018: | Nurse Steward came to see Callaway about his back and knee pain. He received acetaminophen for pain. The nurse told him that the swelling should go down with rest. |
| Repeatedly: | Lt. Thigpen and Lt. Alexander told Callaway that they could not do anything to help him; it was up to the Warden. |
| 4/4/2018: | After filing several sick call requests, Callaway visited medical, where Dr. Santos ordered an x-ray. |
| 4/10/2018: | The x-ray technician told Callaway that he had no broken bones, but he needed a follow-up MRI to determine the source of the pain and swelling. |
| 4/27/2018: | Dr. Brown came to the zone to conduct sick call because insufficient staff were present to transport inmates to medical. She told Callaway that he must have a torn ligament or torn tissue in his knee – and ordered him a "procare knee sleeve." She also ordered a follow-up visit because she did not have the proper equipment to examine him in the unit. |

| | |
|---|---|
| May 2018: | Dr. Brown provided Callaway a 30-day supply of Naproxen, which helped the swelling go down but did not completely relieve his pain. Since that time, he has been able to have the Naproxen prescription refilled at any time by requesting more in a Medical Request form. |
| 5/7/2018: | Maintenance visited Callaway's cell, examined the leak, and told him that they could not repair it because the leak came from the roof. The roof needed to be repaired. That same day, Lt. Anderson checked on the cell, and Callaway told him about the assessment by maintenance. Anderson said he would take care of the roof. |
| 5/8/2018: | Callaway asked Officer Fipps to contact Lt. Anderson to check on the status of moving him to another cell. Fipps said he would do so, but nothing happened. |
| 5/10/2018: | Maintenance confirmed that they could not repair the leak in Callaway's cell and that a move to another cell was the only solution at the time. |
| 5/24/2018: | Callaway filed another sick call request regarding his injured knee because the pain kept him from sleeping. |
| 6/20/2018: | Nurse Steward responded to the sick call request, stating that the next step was to undergo MRI testing to find the source of the pain and swelling, but "It's a process getting an MRI." |
| 7/12/2018: | Dr. Faultz informed Callaway that he had a meniscus tear and needed an MRI, but MDOC does not like to approve those because of the high cost. |
| 7/24/2018: | Warden Simon made rounds, and Callaway informed her about the leaky cell and his injuries – and that he was in pain. She wrote the information in her phone. |
| 7/25/2018: | Warden Simon returned, and Callaway repeated his complaints. Simon said that she had not forgotten about him and that she would get to it. |
| 7/26/2018: | Officer Powell woke Callaway up and told him he was going to medical – that Warden Simon had called to ensure that he was moved and taken to medical. However, no one showed up to move him to a different cell or take him to medical. Powell said that she was the only officer in the building because the Lieutenant had not shown up yet. |
| 9/1/2018: | Callaway wrote Warden Morris about these problems. |
| 9/3/2018: | Callaway wrote Superintendent Turner about these problems. |
| 9/4/2018: | Captain King made rounds, and Callaway explained his problems to him. King told Callaway to write Warden Morris and Superintendent Turner again because there was nothing he could do. |

At Present:   Mr. Callaway currently suffers pain and instability in his knee, and it sometimes makes a popping noise when he moves it. He does not take pain medication, but could receive more Naproxen if he requested it.

Mr. Callaway has seen a nurse at least four times regarding his knee injury and has received Naproxen for the pain on two occasions. He has twice been scheduled to see a doctor about getting an MRI for his knee but never did see a doctor. About three weeks before the *Spears* hearing Nurse Stewart examined Callaway and referred him, again, to a doctor. Prison officials have moved Mr. Callaway out of the flooding cell in November 2018; he testified that his new cell is acceptable.

## General Conditions of Confinement

The periodic flooding of Mr. Callaway's cell with rainwater does not rise to the level of unconstitutionally harsh conditions of confinement. *Shannon v. Vannoy*, 682 F. App'x 283, 285 (5th Cir. 2017) ("allegation that a hole allowed rainwater to enter his cell and that on one occasion he slipped on the water and fell is plainly insufficient" to state a claim for unconstitutionally harsh general conditions of confinement); *see also Garrett v. Davis*, No. 2:16-CV-308, 2017 WL 3124245, at *1 (S.D. Tex. July 24, 2017). "[T]he Eighth Amendment may afford protection against conditions of confinement which constitute health threats but not against those which cause mere discomfort or inconvenience." *Wilson v. Lynaugh*, 878 F.2d 846, 849 (5th Cir.1989), *cert. denied*, 493 U.S. 969 (1989)(citation omitted). "Inmates cannot expect the amenities, conveniences, and services of a good hotel." *Id.* at 849 n.5 (citation omitted). Prison officials have certain duties under the Eighth Amendment, but these duties are only to provide prisoners with "humane conditions of confinement," including "adequate food, clothing, shelter, and medical care . . . ." *Woods v. Edwards*, 51 F.3d 577, 581 n.10 (5th Cir. 1995) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). Considering the "totality of the circumstances," *McCord v. Maggio*, 910 F.2d 1248 (5th Cir. 1990), the instant claims do

not rise to the level of a constitutional violation. The plaintiff has not identified any "basic human need" which he was denied for an unreasonable period of time. *See Woods*, 51 F.3d at 581. These allegations fail to state a claim for unconstitutionally harsh general conditions of confinement.

## Negligence

Mr. Callaway also argues that defendants Morris, Simon, Flagg, Thigpen, and Alexander failed to correct the rainwater leaks in his cell, thus causing his fall and injuries. These allegations sound only in negligence, and negligent conduct by prison officials does not rise to the level of a constitutional violation. *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662 (1986), *Davidson v. Cannon*, 474 U.S. 344, 106 S.Ct. 668 (1986). As such, Mr. Callaway's claims regarding his leaky cell must be dismissed for that reason, as well.

## Denial of Medical Treatment

Mr. Callaway's claim against defendant Willie Knighten is a close one. He has received treatment for his knee injury – and has access to Naproxen whenever he requests it, though he testified at the *Spears* hearing that he was not taking any pain medication. According to the plaintiff, several medical professionals have told him that he needs an MRI to determine the location, nature, and extent of damage to his knee, but months have passed, and he has not received an MRI.

In order to prevail on an Eighth Amendment claim for denial of medical care, a plaintiff must allege facts which demonstrate "deliberate indifference to the serious medical needs of prisoners [which] constitutes 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment . . . whether the indifference is manifested by prison doctors or prison guards in intentionally denying or delaying access to medical care . . . ." *Estelle v. Gamble*, 429 U.S. 97, 104-105, 50 L. Ed. 2d 251, 260 (1976); *Mayweather v. Foti*, 958 F.2d 91, 91 (5th Cir. 1992). The test for establishing deliberate indifference is one of "subjective recklessness as used in the criminal law." *Farmer v. Brennan*, 511

U.S. 825, 837 (1994). Under this standard, a state actor may not be held liable under 42 U.S.C. § 1983 unless plaintiff alleges facts which, if true, would establish that the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 838. Only in exceptional circumstances may a court infer knowledge of substantial risk of serious harm by its obviousness. *Id.* Negligent conduct by prison officials does not rise to the level of a constitutional violation. *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662 (1986), *Davidson v. Cannon*, 474 U.S. 344, 106 S.Ct. 668 (1986).

In cases such as this, arising from delayed medical attention rather than a clear denial of medical attention, a plaintiff must demonstrate that he suffered substantial harm resulting from the delay in order to state a claim for a civil rights violation. *Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993); *Campbell v. McMillin*, 83 F. Supp. 2d 761 (S. D. Miss. 2000). A prisoner's mere disagreement with medical treatment provided by prison officials does not state a claim against the prison for violation of the Eighth Amendment by deliberate indifference to his serious medical needs. *Gibbs v. Grimmette*, 254 F.3d 545 (5th Cir.2001), *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997).

"Deliberate indifference is not established when medical records indicate that [the plaintiff] was afforded extensive medical care by prison officials." *Brauner v. Coody*, 793 F.3d 493, 500 (5th Cir. 2015). Nor is it established by a physician not accommodating a prisoner's requests in a manner he desired or the prisoner's disagreement with the treatment. *Id.*; *Miller v. Wayback House*, 253 F. App'x 399, 401 (5th Cir. 2007). To meet his burden in establishing deliberate indifference on the part of medical staff, the plaintiff "must show that [medical staff] refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in

any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Brauner*, 793 F.3d at 498. The court will give the plaintiff the benefit of the doubt at this stage of proceedings and permit his claims against Willie Knighten for failure to provide adequate medical care to proceed.

### Conclusion

For the reasons set forth above:

(1) The plaintiff's *claims* regarding the *general conditions of confinement as to his flooding cell* will be *dismissed* for failure to state a claim upon which relief could be granted.

(2) The following *defendants* will be *dismissed with prejudice from this case*, as they were involved only in the plaintiff's general conditions of confinement claim, which will be dismissed: *Timothy Morris, Lee Simon, Verlena Flagg, Ed Thigpen, and Montrell Alexander*.

(3) The plaintiff's *claim* regarding *denial of adequate medical care* for failing to provide an MRI of the torn meniscus in his knee and further treatment to repair it will *proceed*.

(4) A judgment consistent with this memorandum opinion will issue today.

**SO ORDERED**, this, the 1st day of May, 2019.

/s/  Roy Percy
UNITED STATES MAGISTRATE JUDGE