IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

DILLON CALLAWAY                                                              PLAINTIFF

v.                                                                          No. 4:19CV7-RP

TIMOTHY MORRIS, ET AL.                                                      DEFENDANTS

## MEMORANDUM OPINION

This matter comes before the court on the *pro se* prisoner complaint of Dillon Callaway, who

challenges the conditions of his confinement under 42 U.S.C. § 1983.  For the purposes of the Prison

Litigation Reform Act, the court notes that the plaintiff was incarcerated when he filed this suit.  The

plaintiff has brought the instant case under 42 U.S.C. § 1983, which provides a federal cause of action

against "[e]very person" who under color of state authority causes the "deprivation of any rights,

privileges, or immunities secured by the Constitution and laws."  42 U.S.C. § 1983.  The plaintiff

alleges that the Willie Knighten, the sole remaining defendant in this case, failed to provide him with

adequate medical care.  The defendant has moved for summary judgment; the plaintiff has not

responded to the motion, and the deadline to do so has expired.  The matter is ripe for resolution.  For

the reasons set forth below, the defendant's motion for summary judgment will be granted, and

judgment will be entered for the defendant.

### Summary Judgment Standard

Summary judgment is appropriate if the "materials in the record, including depositions,

documents, electronically stored information, affidavits or declarations, stipulations (including those

made for purposes of the motion only), admissions, interrogatory answers, or other materials" show

that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law."  FED. R. CIV. P. 56(a) and (c)(1).  "The moving party must show that if the evidentiary

material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden." *Beck v. Texas State Bd. of Dental Examiners*, 204 F.3d 629, 633 (5th Cir. 2000) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), *cert. denied*, 484 U.S. 1066 (1988)).

After a proper motion for summary judgment is made, the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby,* Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Beck*, 204 F.3d at 633; *Allen v. Rapides Parish School Bd.*, 204 F.3d 619, 621 (5th Cir. 2000); *Ragas v. Tennessee Gas Pipeline Company*, 136 F.3d 455, 458 (5th Cir. 1998). Substantive law determines what is material. *Anderson*, 477 U.S. at 249. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*, at 248. If the non-movant sets forth specific facts in support of allegations essential to his claim, a genuine issue is presented. *Celotex*, 477 U.S. at 327. "Where the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 89 L. Ed. 2d 538 (1986); *Federal Savings and Loan, Inc. v. Krajl*, 968 F.2d 500, 503 (5th Cir. 1992).

The facts are reviewed drawing all reasonable inferences in favor of the non-moving party. *Allen*, 204 F.3d at 621; *PYCA Industries, Inc. v. Harrison County Waste Water Management Dist.*, 177 F.3d 351, 161 (5th Cir. 1999); *Banc One Capital Partners Corp. v. Kneipper*, 67 F.3d 1187, 1198 (5th Cir. 1995). However, this is so only when there is "an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994); *see Edwards v. Your Credit, Inc.*, 148 F.3d 427, 432 (5th Cir. 1998). In the absence of

- 2 -

proof, the court does not "assume that the nonmoving party could or would prove the necessary facts." *Little*, 37 F.3d at 1075 (emphasis omitted).

The very purpose of summary judgment is to "pierce the pleadings and assess the proof in order to see whether there is a genuine issue for trial." Advisory Committee Note to the 1963 Amendments to Rule 56. Indeed, "[t]he amendment is not intended to derogate from the solemnity of the pleadings[;] [r]ather, it recognizes that despite the best efforts of counsel to make his pleadings accurate, they may be overwhelmingly contradicted by the proof available to his adversary." *Id.* The non-moving party (the plaintiff in this case), must come forward with proof to support each element of his claim. The plaintiff cannot meet this burden with "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356 (1986), "conclusory allegations," *Lujan v. National Wildlife Federation*, 497 U.S. 871, 871-73, 110 S.Ct. 3177, 3180 (1990), "unsubstantiated assertions," *Hopper v. Frank,* 16 F.3d 92 (5th Cir. 1994), or by a mere "scintilla" of evidence, *Davis v. Chevron U.S.A., Inc.,* 14 F.3d 1082 (5th Cir. 1994).

It would undermine the purposes of summary judgment if a party could defeat such a motion simply by "replac[ing] conclusory allegations of the complaint or answer with conclusory allegations of an affidavit." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888, 110 S.Ct. 3177, 3188 (1990). In considering a motion for summary judgment, a court must determine whether the non-moving party's allegations are *plausible. Matsushita, supra.* (emphasis added). "[D]etermining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937 (2009) (discussing plausibility of claim as a requirement to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6)).

In considering a motion for summary judgment, once the court "has determined the relevant set of facts and drawn all inferences in favor of the nonmoving party *to the extent supportable by the record*, [the ultimate decision becomes] purely a question of law." *Scott v. Harris*, 550 U.S. 372, 381 (2007) (emphasis in original). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on the motion for summary judgment." *Id.* at 380.

### The Plaintiff's Claims

Mr. Callaway alleges that defendant Willie Knighten acted with deliberate indifference to his medical needs by refusing adequate medical care for his knee injury and pain sustained when he fell in his cell on March 12, 2018. Doc. 1 at 8. He also alleges Ms. Knighten delayed his medical treatment, leaving him in pain for six days. *Id.* at 10. According to Mr. Callaway, on March 12, 2018, correctional officers found him in his cell unconscious and called the ambulance. Doc. 1 at 9. Because there was not enough security staff to take him to the hospital at the time, medical staff came to his cell, "patched [him] up," and scheduled an appointment to see a doctor the next day. *Id.* Later that night, Mr. Callaway was experiencing pain in his back and knee and called correctional officers to take him to medical unit, but the officer could not take him because he did not have keys to open the cell. *Id.* at 9. Mr. Callaway alleges, "I was denied medical treatment again due to security." *Id.*

On March 20, 2018, Nurse Stewart came to Dillon Callaway's cell to examine his injuries and gave him Acetaminophen 325 mg for his pain. *Id.* at 10. On April 4, 2018, Callaway was transported to the medical unit, where Dr. Santos examined his knee and ordered x-rays. *Id.* On April 10, 2018, Mr. Callaway reported to the medical unit where the x-ray technician reviewed

his x-ray results with him and explained to him that his knee was not broken, but it must be a torn ligament. *Id.* On April 27, 2018, a doctor entered the zone for sick calls, examined Callaway's knee, and ordered him a knee sleeve. *Id.* Callaway, however, chose not to wear the knee sleeve because it was painful, and his family discovered that it was cutting off fluid in the initial healing process. Doc. 1 at 10-11. Mr. Callaway further alleges that on June 21, 2018, Nurse Stewart informed he that he needed an MRI. *Id.* at 12. According to Callaway, on July 12, 2018, Dr. Faultz told him he needed an MRI, but he never received one. *Id.*

According to Mr. Callaway, he was not taken to the medical unit because he was "constantly told that there isn't enough staff to take me to the hospital, . . . and security will not spare two officers to take me to the doctor when I suppose to go." *Id.* at 10. Mr. Callaway also states that "medical said they are trying to see me." *Id.*

Mr. Callaway later clarified his claims at a *Spears* Hearing on April 30, 2019.[1] For purposes of this Motion, the court relies upon Callaway's Complaint, his medical records, and his Spears Hearing testimony. *Eason v. Holt*, 73 F.3d 600, 602 (5th Cir. 1996) (holding that the testimony of a *Spears* Hearing becomes a part of the *pro se* prisoner's filing). At the *Spears* Hearing, Mr. Callaway made the general allegation that he is suing defendant Knighten because she is the director of medical services and responded to his request to see a doctor on several occasions, but he had not seen a doctor. Plaintiff's *Spears* Hearing Testimony at 12:40-12:55.

---

[1] A *Spears* hearing, otherwise known as an omnibus hearing, "affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners." *Davis v. Scott*, 157 F.3d 1003, 1005-06 (5th Cir. 1998). The hearing "is in the nature of an *amended complaint* or a more definite statement." *Adams v. Hansen*, 906 F.2d 192, 194 (5th Cir. 1990) (emphasis added). Allegations made during the *Spears* hearing "supersede[]" those made in the complaint. *Riley v. Collins*, 828 F.2d 306, 307 (5th Cir. 1987).

- 5 -

Mr. Callaway does not allege that Willie Knighten was directly involved in his medical treatment.

He also testified that he received an x-ray, a knee sleeve, and medication for his knee injury. *Id.* at 4:26-5:11. He testified that he never received an MRI or any other treatment. *Id.* at 4:15. He further testified that he has been prescribed Naproxen for his knee injury, but he does not take it. *Id.* at 7:29-7:40. He testified further that he can receive additional medication for his pain if he requests it. *Id.* at 7:44. Mr. Callaway also testified that medical staff informed him that his injury would improve with time. *Id.* at 6:09-6:16.

### Mr. Callaway's Medical Records.

On March 12, 2018, emergency medical personnel examined Mr. Callaway's knee injury in his cell. *See* Plaintiff's Composite Medical Records attached to Defendant's Motion for Summary Judgment as Exhibit A at 000179. Medical staff scheduled an appointment for him to report to the medical unit on March 13, 2018. *Id.* at 000180. However, correctional staff did not transport Mr. Callaway to medical from March 13-19, and each day medical staff rescheduled his appointments. *Id.* at 000175-179 and 000180. On March 20, 2018, Mr. Callaway reported to the medical unit complaining of knee pain. Exhibit A at 000172. Medical staff examined his knee and prescribed Ibuprofen 200 mg. Ex. A at 000173. On April 4, 2018, Mr. Callaway returned to the medical unit complaining of knee pain. *Id.* at 000167. Medical staff prescribed him a 30-day supply of Naproxen and Ibuprofen to keep on his person and take as prescribed. *Id.* at 000168, 000240, 000261, 000280, 000281. Medical staff also advised him to return to the medical unit as needed. *Id.* On April 5, 2018, Dr. Santos examined Mr. Callaway's knee, noting minimal swelling and intact ligaments. *Id.* at 000166. Dr. Santos also ordered an x-ray of the affected knee. *Id.* The x-ray results showed "no fracture or dislocation. Bony alignments is normal.

- 6 -

Soft tissue are unremarkable." Ex. A at 000279. On April 10, 2018, medical staff reviewed these x-ray results with Mr. Callaway. *Id.* at 000165. On May 2, 2018, Dr. Santos ordered a knee/ligament sleeve for the knee injury. *Id.* at 000160. Mr. Callaway received the knee sleeve that same day. *Id.* at 000275. On June 20, 2018, medical staff examined Mr. Callaway's knee, noting no acute distress or trauma and no redness or swelling. *Id.* at 000149.

On July 12, 2018, Dr. Faulks examined Mr. Callaway's knee and concluded that it was swollen and "probably a torn meniscus." *Id.* at 000143-144. Noting that the x-ray was normal, and that Callaway had a knee brace, Dr. Faulks prescribed Plaintiff Naproxen 500 mg. *Id.* On August 8, 2018, Mr. Callaway reported to the medical unit complaining of knee pain. Ex. B at 000132. Medical staff examined his knee and offered medication for pain and mild swelling, but Mr. Callaway declined to accept the medications. *Id*. at 133.

<h3 style="text-align:center">Denial of Medical Treatment</h3>

In order to prevail on an Eighth Amendment claim for denial of medical care, a plaintiff must allege facts which demonstrate "deliberate indifference to the serious medical needs of prisoners [which] constitutes 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment . . . whether the indifference is manifested by prison doctors or prison guards in intentionally denying or delaying access to medical care . . . ." *Estelle v. Gamble*, 429 U.S. 97, 104-105, 50 L. Ed. 2d 251, 260 (1976); *Mayweather v. Foti*, 958 F.2d 91, 91 (5th Cir. 1992). The test for establishing deliberate indifference is one of "subjective recklessness as used in the criminal law." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Under this standard, a state actor may not be held liable under 42 U.S.C. § 1983 unless plaintiff alleges facts which, if true, would establish that the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also

draw the inference." *Id.* at 838. Only in exceptional circumstances may a court infer knowledge of substantial risk of serious harm by its obviousness. *Id.*

Negligent conduct by prison officials does not rise to the level of a constitutional violation. *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662 (1986), *Davidson v. Cannon*, 474 U.S. 344, 106 S.Ct. 668 (1986). In cases such as this, arising from delayed medical attention rather than a clear denial of medical attention, a plaintiff must demonstrate that he suffered substantial harm resulting from the delay in order to state a claim for a civil rights violation. *Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993); *Campbell v. McMillin*, 83 F. Supp. 2d 761 (S. D. Miss. 2000). A prisoner's mere disagreement with medical treatment provided by prison officials does not state a claim against the prison for violation of the Eighth Amendment by deliberate indifference to his serious medical needs. *Gibbs v. Grimmette*, 254 F.3d 545 (5th Cir.2001), *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997).

"Deliberate indifference is not established when medical records indicate that [the plaintiff] was afforded extensive medical care by prison officials." *Brauner v. Coody*, 793 F.3d 493, 500 (5th Cir. 2015). Nor is it established by a physician not accommodating a prisoner's requests in a manner he desired or the prisoner's disagreement with the treatment. *Id.*; *Miller v. Wayback House*, 253 F. App'x 399, 401 (5th Cir. 2007). To meet his burden in establishing deliberate indifference on the part of medical staff, the plaintiff "must show that [medical staff] refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Brauner*, 793 F.3d at 498.

### Discussion

Mr. Callaway makes two allegations regarding his medical treatment – denial of an MRI and delay in medical treatment for his injured knee. His medical records and testimony establish, however, that he was provided continuous medical treatment for his knee injury. Nothing in the record reflects that medical staff denied him access to medical care for his injury. Specifically, the record does not show that defendant Willie Knighten caused any delay in medical treatment. To the extent that a delay took place, correctional officers (not Ms. Knighten) failed for several days to transport Mr. Callaway to the medical unit because of staffing shortages. The record also shows that, later in his treatment, Mr. Callaway refused medical treatment for his knee pain and swelling.

**Failure to Transport Callaway to Medical for Treatment**

Mr. Callaway acknowledges that defendant Wille Knighten responded to his medical requests and informed him that an appointment had been scheduled for a doctor to examine his knee. *Spears* Hearing Testimony at 12:40-12:55. In addition, his Administrative Remedy Program file shows that appointments were scheduled for him to see a doctor. *See* Plaintiff's Composite Administrative Remedy Program File attached to Defendant's Motion for Summary Judgement as Ex. B at 000331-332. In Callaway's First Step Response, he states, "I'm not satisfied because [correctional staff] kept telling me they short of [correctional staff, and] can't take me." *Id.* at. 000332. Regional Medical Director C.M. Ramsue informed Mr. Callaway that medical staff are not responsible for transporting and escorting inmates to the medical unit. *Id.* at 000314. Dr. Ramsue told Mr. Callaway that he would have to address not being transported for his medical appointments with MDOC staff. *Id.*

Mr. Callaway's primary complaint against Willie Knighten is that she failed to schedule an appointment for him to see a doctor. However, the documents of record show that Ms. Knighten

indeed scheduled appointments for him to see a doctor, and he was not transported to his appointments for reasons beyond Ms. Knighten's control. As such, Defendant Knighten is entitled to summary judgment as to Callaway's claims against her.

**Continuous and Ongoing Medical Treatment for Callaway's Knee Injury**

"Deliberate indifference is particularly difficult to establish when the inmate was provided with ongoing medical treatment." *Lambert v. Woodall*, 2015 WL 7313411, at *2 (S.D. Miss. Nov. 19, 2015) (quoting *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985)). Indeed, "[m]edical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference." *Banuelos*, 41 F.3d at 235. That is the situation in the present case, as Mr. Callaway's medical records show that medical staff provided him with ongoing medical treatment for his knee injury. *See* Ex. A at 000001, 000105, 000106, 000131, 000132, 000133, 000137, 000143, 000144, 000149, 000160, 000165, 000166, 000167, 000172, 000173. Further, even when Callaway was housed in administrative segregation, medical staff provided him with ongoing medical treatment during their medical segregation rounds. Ex. A at 000214, 00215, 000219, 000224, 000228, 000230, 000235, 000238, 000253, 000255, 000259, 000266, 000270, 000276. Thus, after his initial treatment, Mr. Callaway received continuous care for his knee injury, and medical staff told him to report to the medical unit as needed if his symptoms became worse. *Id.* at 000168. He did as instructed and received treatment each time he reported to the medical unit. As Mr. Callaway received ongoing medical treatment for his knee injury, Ms. Knighten is entitled to summary judgment.

**Mr. Callaway's Disagreement with the Course of Treatment**

It appears that Mr. Callaway disagrees with the course of treatment he received, as he wanted medical staff to conduct an MRI to examine his knee. Mr. Callaway's medical records

- 10 -

do not support his allegation that he was informed he needed an MRI. Mr. Callaway actually testified that the doctor informed him that his injury would improve with time. Plaintiff's *Spears* Hearing Testimony at 6:09-6:16. Medical staff provided Mr. Callaway with an x-ray, knee sleeve, and medication to keep on his person. *Id.* at 3:42; 4:15-5:15. Indeed, Mr. Callaway decided not to take the prescribed medication. *Id*. at 7:29-7:40. Mr. Callaway's desire to have an MRI reflects only his disagreement with the treatment provided, which is insufficient to establish deliberate indifference.

**Ms. Knighten Was Not Responsible for Delaying Mr. Callaway's Treatment**

The delay Mr. Callaway experienced in receiving medical treatment for his knee injury cannot be attributed to defendant Willie Knighten, as the delay arose entirely out of the decision by correctional staff not to transport Callaway for his scheduled medical appointments. As Mr. Callaway has alleged, despite medical staff trying to see him, he was not taken to the medical unit because there was a shortage of correctional staff to escort him. *See* Doc. 1 at 10. Indeed, Mr. Callaway's medical records support this claim. Medical staff was repeatedly forced to reschedule his appointments because he was not transported to the medical unit by correctional officers. *See* Ex. A at 000109, 000110, 000111, 000121, 000122, 000125, 000126, 000130,000136, 000145, 000151, 000152, 000153, 000154, 000155, 000163, 000164, 000171, 000175, 000176, 000177, 000178, 000180. As such, Ms. Knighten was not deliberately indifferent to Callaway's serious medical needs.

**Conclusion**

Defendant Willie Knighten did not refuse to treat Mr. Callaway's injured knee; nor did she delay treating it. To the contrary, she promptly scheduled an appointment, then rescheduled it multiple times because correctional staff (not medical staff) was too shorthanded to transport him. In addition,

Mr. Callaway's desire to have an MRI conducted on his knee reflects only his disagreement with the medical treatment provided, which does not rise to the level of a constitutional violation based upon denial of adequate medical care. For the reasons set forth above, judgment will be entered in favor of the defendants in all respects. A final judgment consistent with this memorandum opinion will issue today.

      **SO ORDERED**, this, the 24th day of September, 2020.

/s/ Roy Percy
UNITED STATES MAGISTRATE JUDGE